IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CLIFTON THURMAN,                )
                                )
        Plaintiff,               )
                                )
    vs.                          )    No. 03 C 8950
                                )
HOMEWOOD POLICE OFFICERS         )
BOEREMA, WIEST, MISNER and       )
STRUNK, CITY OF HOMEWOOD, and    )
GERALD ZANSITIS,                 )
                                )
        Defendants.              )

## MEMORANDUM OPINION AND ORDER

Plaintiff Clifton Thurman brought this action against defendants Harry James Boerema, Curt Wiest, Robert Misner and Kenneth Strunk (collectively, "officers"), the Village of Homewood (Homewood), and Gerald Zansitis (Zansitis), alleging civil rights violations under 42 U.S.C. § 1983 and defamation under Illinois law. All defendants move for summary judgment, with Zansitis arguing for dismissal due to lack of subject matter jurisdiction. For the following reasons, defendants' motions are granted.

## BACKGROUND

The following facts are taken from the parties' statements submitted pursuant to Local Rule 56.1 and are, for purposes of the summary judgment motion, viewed in the light most favorable to plaintiff. On November 28, 2004, plaintiff, a Chicago police officer, was shopping at a Home Depot store in Homewood, Illinois. Plaintiff, wearing street clothes, was off-duty at the time but had with him his service revolver, which was sleeved in a holster tucked into his waistband, near the left pocket on the backside of his jeans. A Home Depot employee observed the gun and promptly called Homewood police. Officers Boerma and Misner soon

arrived and confronted plaintiff, who told them that he had a gun, a star around his neck, and police credentials in his pocket. The officers then removed the gun and attempted to ascertain whether or not plaintiff was actually a police officer who was entitled to carry a gun.

The parties dispute aspects of the officers' investigation, including its duration. Plaintiff claims that police harassed him by saying that he was not really a police officer and threatened him with jail during a period lasting between 20 to 25 minutes. Plaintiff also says that when the officers asked him where he worked, he promptly responded with the address of his assigned station. In contrast, the officers state that plaintiff only said "21st district," which led a Homewood dispatcher who the officers contacted to call District 21 of the state police, which held no records regarding plaintiff's employment. The officers were not able to verify plaintiff's status as an officer until he volunteered the correct phone number for his assigned station. Defendants also point out that plaintiff's firearms registration card was manipulated – its laminate was upturned and some information was blocked out with white-out and written over with pencil. Defendants further state that the entire incident lasted only 14 minutes and that plaintiff was generally uncooperative.

Plaintiff first alleges that the detention was unreasonable, in violation of his Fourth Amendment rights. Flowing from that claim, plaintiff contends that Homewood is liable because of its alleged failure to train its officers to identify Chicago police officers. He also claims that the officers and Zansitis retaliated against him by defaming him in a complaint that they submitted to the Chicago Police Department. In response, the officers argue that the detention was not unreasonable. Homewood contends it is not liable because the requirements for municipal liability are absent. The officers and Zansitis argue that the court lacks jurisdiction to hear the defamation claim, and that even if jurisdiction exists they benefit from immunity.

## DISCUSSION

The Fourth Amendment safeguards "against unreasonable searches and seizures." U.S. CONST. amend. IV. Plaintiff's argument rests not on the initial stop – which he does not challenge as invalid – but, instead, on the subsequent investigatory detention. *See* Illinois v. Caballes, 125 S. Ct. 834, 846 (2005) ("a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution."). Plaintiff contends that the identification he provided, specifically his badge, was sufficient and should have confirmed to the officers that he was a Chicago police officer who was entitled to carry a handgun. Thus the issue is whether the officer's investigation was reasonable.

When evaluating the reasonableness of the investigation, the court considers "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain'" plaintiff. Leaf v. Shelnutt, 400 F.3d 1070, 1092 (7th Cir. 2005) (quoting United States v. Sharpe, 470 U.S. 675, 686 (1985)). The length of a stop may determine its intrusiveness, but no bright-line rule gauges how long is too long. United States v. Robinson, 30 F.3d 774, 784 (7th Cir. 1994). Examining whether the officers acted reasonably "involves a consideration of 'the totality of circumstances known to the officers at the time of the stop.'" United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000) (quoting United States v. Quinn, 83 F.3d 917, 921 (7th Cir. 1996)).

In light of all the circumstances, the officers acted reasonably when they sought additional identification to confirm that plaintiff was a police officer. When the officers approached plaintiff they asked him if he had a weapon, and he responded affirmatively, and also said that he had a star around his neck and his credentials in his pocket (plf. dep. 58). Plaintiff believed that the star was sufficient identification (*see* plf. dep. 59, "when I said I had

a star around my neck, I meant I'm a police officer."). While a badge may adequately identify its holder as a police officer in many situations, in this case the officers encountered a badge from a different jurisdiction. Further, even though Officer Boerema admitted that he had seen a Chicago police badge on prior occasions, he also noted that badges can be acquired from unofficial sources (Boerema dep. 7) – a fact plaintiff also acknowledged (plf. dep. 97). Under these circumstances the officers acted reasonably when they sought additional identification from plaintiff. *See* United States v. Scheets, 188 F.3d 829, 838 (7th Cir. 1999).

In addition to his badge, plaintiff produced several identification cards. He gave the officers a visibly altered firearms registration card. He also provided a card issued by the Chicago Police Department that identified plaintiff as an employee, but not an officer. Neither of these cards unequivocally showed that plaintiff was a police officer; moreover, the altered firearms registration card supplied the officers with additional cause to pursue their investigation. Similarly, plaintiff's responses to the officers' questions heightened, rather than diminished their suspicions. First, plaintiff stated that he did not have a commission card, which is an identification card issued to suburban police officers and firefighters. Second, plaintiff denied the existence of public housing buildings near the 21st District station house, when Officer Weist asked him to identify those buildings (Weist formerly worked with the Chicago Housing Authority). The officers did not know that commission cards were not issued to Chicago police officers, and Officer Weist was unaware that the public housing buildings had been recently razed. Had the officers known that plaintiff would not have a commission card, and if Officer Weist knew of the buildings' destruction, then these questions would have unnecessarily delayed the investigation, perhaps in an unreasonable manner. Instead, the officers posed those questions to educe information that would expedite their investigation, rather than prolong plaintiff's detention. Nothing in the record shows that the officer's

conduct was not reasonably related to verifying plaintiff's employment. *See* <u>Hiibel v. Sixth Judicial Dist. Court</u>, 542 U.S. 177, 124 S. Ct. 2451, 2458 (2004) (quoting <u>Sharpe</u>, 470 U.S. at 682) ("The officer's action must be 'justified at its inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place.'").

The officers then attempted to contact the "21st District," but the dispatcher wrongly assumed that this referred to the Illinois State Police, who denied having plaintiff in its employ. It was not until plaintiff gave officers the phone number for the 21st District that they were able to confirm his status as a police officer.[1] There is no indication of any subsequent delay in returning to plaintiff his gun and identification. In other words, the investigation terminated immediately upon verification of plaintiff's employment. *See* <u>United States v. Childs</u>, 277 F.3d 947, 952 (7th Cir. 2002) ("A person stopped on reasonable suspicion must be released as soon as the officers have assured themselves that no skullduggery is afoot.").

The officers were confronted with a potentially dangerous situation: a man with a gun in a public venue. The officers were diligent, not dilatory, when they attempted to verify plaintiff's identity. The duration of the investigation was prolonged not by their unreasonable behavior, but by information that heightened rather than alleviated their suspicions. In sum, there are no facts in the record that create a dispute as to the reasonableness of the officers' conduct. Plaintiff has failed to create a factual dispute regarding his alleged constitutional injury, and his remaining claims quickly fall because they balance on that alleged violation.

Plaintiff's claim against Homewood fails absent a constitutional violation. One may sue local governing bodies under section 1983 when his or her constitutional injury is caused by

---

[1] Plaintiff contends that he was cooperative during the transaction and that the officers were rude and berated him, but the officers state that plaintiff was uncooperative and belligerent. No credibility determinations are made at this stage; however, we do observe that plaintiff did not give the number for the 21st District at the onset of the investigation and, instead, withheld that information until the officers asked him directly for it, which resultantly prolonged the investigation. *See* <u>Sharpe</u>, 470 U.S. at 687-88.

the local government's policies or customs. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). A constitutional violation is a predicate to municipal liability, and because plaintiff endured no constitutional injury Homewood is not liable under Monell. *See* Contreras v. City of Chicago, 119 F.3d 1286, 1294 (7th Cir. 1997) (municipal liability is "secondary to the basic issue of whether a constitutional guarantee has been violated."); Windle v. City of Marion, 321 F.3d 658, 663 (7th Cir. 2003) (must prove individual officers are liable in order to recover from municipality on a failure-to-train theory).

Homewood faces no liability even if its officers violated plaintiff's rights. A municipality may be held liable under section 1983 if its policies or customs resulted in a constitutional violation (McGreal v. Ostrov, 368 F.3d 657, 684 (7th Cir. 2004)), but Homewood had neither a policy nor a widespread practice for identifying Chicago police officers. Homewood's failure to train its officers "may serve as the basis for § 1983 liability only where [it] amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). A municipality demonstrates deliberate indifference "when it fails to train its employees to handle a recurring situation that presents an obvious potential for a constitutional violation and this failure to train results in a constitutional violation" or "if it fails to provide further training after learning of a pattern of constitutional violations by the police." Dunn v. City of Elgin, 347 F.3d 641, 646 (7th Cir. 2003).

As to the first scenario, there is no indication that identifying off-duty Chicago police officers is a recurring situation necessitating official training. And with respect to the second situation, the incident in Home Depot appears to be nothing more than an isolated encounter, rather than part of a pattern of constitutional violations. In sum, there is nothing in the record that shows that encounters with off-duty Chicago officers were so frequent that problems

continuously arose with their identification, and that Homewood policymakers were deliberately indifferent to the need to institute remedial policies. *See* City of Canton, 489 U.S. at 390. Further, plaintiff states that "A rational written policy would also require the officer to make a prompt telephone call to the station of assignment if verification beyond the paper credentials is appropriate." But this is exactly what happened here: the officers found the paper credentials insufficient and called plaintiff's employer after he eventually provided them with the correct phone number.

Plaintiff directs his final argument against the officers and Zansitis, who filed a complaint against him with the Chicago Police Department. Plaintiff insists that this is a section 1983 retaliation claim, but in his second amended complaint he describes the claim as a conspiracy actionable under section 1983. Despite the amorphous nature of this claim, it is clear that it is at root a state law defamation claim.

Whether phrased as a conspiracy or a retaliation claim, plaintiff must still show an underlying violation of a constitutional right. *See* Lesser v. Braniff Airways, Inc., 518 F.2d 538, 540 (7th Cir. 1975) ("the gist of the [§ 1983] cause of action is the deprivation and not the conspiracy"). Plaintiff relies on Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005), in which the court noted that conduct spurred by a retaliatory motive may ground a retaliation claim, even if that conduct does not independently violate the Constitution. But mere allegations of retaliation do not obviate the need for a constitutional injury. *See id.* (observing that the plaintiff "asserted a constitutionally protected activity, the exercise of which caused the [defendants'] retaliatory action."); Matzker v. Herr, 748 F.2d 1142, 1150 (7th Cir. 1984) ("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.").

The officers' investigation resulted in no constitutional injury. Plaintiff, however, took

protected activity when he filed this lawsuit (Glatt v. Chicago Park Dist., 87 F.3d 190, 193 (7th Cir. 1996); Zorzi v. County of Putnam, 30 F.3d 885, 896 (7th Cir. 1994)), and if the officers conspired to retaliate against that activity by lodging the complaint, plaintiff's allegation of harm would be sufficient. But constitutional injury is only half of a section 1983 claim – plaintiff must also allege that "the conduct complained of was committed by a person acting under color of state law." Case v. Milewski, 327 F.3d 564, 566 (7th Cir. 2003). Here, plaintiff fails to show that the officers acted under color of state law, and their status as police officers did not enable them to file the complaint. Rather, any citizen may file a complaint against any Chicago police officer. See Chicago Mun. Code § 2-84-430.

Plaintiff does state that the officers "misused their office as Homewood police officers to persuade Zansitis" to file the complaint (plf. complaint ¶10). Merely alleging misuse of office does not show that the officers' positions enabled their conduct. And, even if that allegation was sufficient, plaintiff states that the officers misused their office to convince Zansitis to file the complaint, which plaintiff believes was filed "to prejudice [him] in his employment" (plf. complaint ¶ 11). The goal of a section 1983 conspiracy must be the deprivation of a constitutional right. See Hill v. Shobe, 93 F.3d 418, 422 (7th Cir. 1996) ("For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiff's constitutional rights."). Here plaintiff states that the defendants conspired to affect his employment, and not impact the protected right at issue – the filing of this lawsuit.[2] Thus, no section 1983 claim lies against the officers because they did not act under color of state law, and plaintiff acknowledges that the alleged conspiracy targeted no rights secured by the Constitution.

---

[2] Plaintiff does not allege that the complaint has deterred him from exercising any rights, and he admits that it has resulted in no adverse consequences at work (plf. dep. 18-19).

Without the inappropriate section 1983 accoutrement, plaintiff's claim is returned to its natural state – a state law defamation claim, which must be dismissed for lack of subject matter jurisdiction. On the one hand, all federal claims have been dismissed and we choose not to invoke supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). Moreover, supplemental jurisdiction is not even proper under section 1367(a). Plaintiff alleges that the officers and Zansitis filed a complaint against him in response to his lawsuit,[3] and not from his encounter with the officers in Home Depot, which shows that defendants' complaint and the alleged (and non-existent) constitutional violations do not form part of the same case or controversy, but instead stem from clearly distinct sources.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment brought by the officers and Homewood are granted, and plaintiff's claim against defendant Zansitis is dismissed for lack of subject matter jurisdiction.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 2, 2005.

---

[3] In his complaint (¶ 9), plaintiff states: "After learning that they were being sued in this action, and with the intent of causing harm to plaintiff because he had complained of their wrongdoing, [officers] engaged defendant Zansitis to make false and defamatory oral and written statements to the Chicago police department about plaintiff."